ETHIE DAVIDSON ET UX., Appellants, v. SUPREME LODGE, KNIGHTS OF PYTHIAS, Respondent.

St. Louis Court of Appeals, May 11, 1886.

1. BENEVOLENT SOCIETIES—CHANGE OF BENEFICIARIES.—A member of the "endowment rank" of the Knights of Pythias, who becomes suspended by the suspension of the "section" of which he is a member, may, in his application for reinstatement, designate a new beneficiary, and the "lodge," in re-admitting him, acquiesces in the change, notwithstanding he receives and countersigns a "clearance card" referring to him as the holder of his old certificate, which, by its terms, had become null and void.

2. —————— EVIDENCE—OPINION OF OFFICER.—The opinion of an officer of a benevolent society, as to the interpretation to be given to its laws, is not admissible in evidence, in the absence of evidence that he was, under the laws of the society, a judicatory for the purpose of making such interpretation.

APPEAL from the St. Louis Circuit Court, GEORGE W. LUBKE, Judge.

*Affirmed.*

F. H. BACON, UPTON M. YOUNG, and ALEX. YOUNG, for the appellants: The laws of the endowment rank (Sec. 2, Art. 9), pointing out but the one way in which the beneficiaries could be changed, that way is the only way, and necessarily excludes all others. *Coleman v. Supreme Lodge Knights of Honor*, 18 Mo. App. 181.

HOUGH, OVERALL & JUDSON, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This action was brought to recover the sum of two thousand dollars, claimed to be due the female plaintiff by the terms of a beneficiary certificate issued by the defendant to her father, Frank K. Kirkpatrick, and payable to her. Since the issue of the certificate she inter-

married with her co-plaintiff. The case was tried before the circuit court, sitting as a jury, upon the pleadings, an agreed statement of facts, and certain exhibits thereto, together with a deposition of Halyor Nelson, the "Supreme Master of Exchequer" of the defendant. Declarations of law were given and refused ; but, as there is no controversy whatever as to the facts, these declarations of law become unimportant, the real question being whether the judgment of the court is the proper conclusion of law upon the conceded facts. There is, also, a preliminary question as to whether the court was right in excluding a portion of the deposition of Mr. Nelson on the ground that it was a mere expression of opinion upon the construction of a written instrument, and, as such, incompetent. This will be noticed in the proper place.

Stated briefly, the conceded facts were, that on the sixteenth of October 1879, Frank K. Kirkpatrick, being a member in good standing of the order known as Knights of Pythias, made an application for membership in the first and second classes of the department of that order in which the lives of members of the order are insured, known as the "Endowment Rank" ; that, in this application he named the female plaintiff, his daughter, then Ethie Kirkpatrick, as the beneficiary in the certificate of membership in the second class, calling, under certain conditions, for the sum of two thousand dollars ; that his application was accepted ; and that he thereupon became a member in good standing of what was known as section 346 of Knights of Pythias, which section was located at Holden, Mo. It appears that the supreme lodge in collecting the dues necessary to keep up this scheme of mutual life insurance, does not deal with the individual members of the endowment rank, but deals with the different "Sections," treating each as a unit ; and that, when a section, becomes to a certain extent, in arrears in respect of its dues to the endowment fund, it is suspended as a section. It, also, appears that it is a part of this

scheme that when a section is thus suspended, all the members of it become, *ipso facto*, suspended, and that their beneficiary certificates, by their own terms, become null and void. It appears, moreover, that provision is made in this scheme by which individual members of the suspended section may become reinstated and may receive what is known as a "'clearance card," which entitles them to become members of other sections, which are not in a state of suspension, within a period of six months, upon proof that they are in good standing in the order of Knights of Pythias and not in arrears in respect of dues. The manner in which a member thus suspended may be reinstated is prescribed at length and with careful detail by one of the statutes of the order, called "Constitution for Sections of Endowment Rank." The provisions of this statute, so far as they appear to be material to the present controversy, are as follows :

"Art. IV, Sect. 6. In addition to the preceding penalties, a member may be suspended from this rank (without its necessarily affecting his standing in the lodge to which he belongs) for a violation of any part of the obligation assumed in becoming a member of this rank ; and in case of suspension for such cause shall forfeit all interest in the endowment fund.; and, if reinstated, he must pay the admission fee and all assessments that have accrued during the period of his suspension."

"Art. V, Sect. 3. Applications for membership, reinstatements, or additional class or classes, must clearly designate the class or classes applied for ; which, having passed the favorable action of the committee on character, and ball ballot, must be sent with the requisite fee, including twenty-five cents for the medical examiner-in-chief, to the supreme master of exchequer, who shall immediately submit said application to the medical examiner-in-chief, for his approval or disapproval, which shall be endorsed upon the application. If favorable, the supreme master of exchequer—unless, in his opinion, the said application require reference to the

board of control—shall immediately issue a regular certificate of membership in the endowment rank, for each class desired, signed by the supreme chancellor and supreme keeper of records and seal, and countersigned and registered by the supreme master of exchequer, specifying the class or classes to which he belongs, and certifying that at his death the benefits specified in the preceding section shall be paid. Secretaries and treasurers are strictly prohibited from delivering any certificate of endowment to a member who has not taken O. B. N., and no one shall have any interest in the endowment fund until he shall have taken the said O. B. N., and the date of taking the same shall be stated on the certificate, Should a member, after being notified to take the O. B. N., neglect or refuse to do so for thirty days, he shall forfeit all his title and interest in the endowment rank, and its funds, and the secretary and treasurer of the section shall return the certificate or certificates to the supreme master of exchequer for cancellation. Should the medical examiner-in-chief disapprove the application, the fee received for it by the supreme master of exchequer shall be placed to the credit of the section, except the twenty-five cents for the medical examiner-in-chief, and the section shall refund the fee to the applicant.''

''Art. VI, Sect. 5. A section of the endowment rank shall be responsible and liable to the supreme lodge for all moneys collected on assessments by its secretaries and treasurer, which he has neglected to pay over to the supreme master of exchequer in the manner and in the time prescribed by law ; and in case of a section neglecting to pay the supreme master of exchequer the same, on demand, it may be suspended, *provided*, that a section suspended for non-payment of assessments shall be restored by the supreme chancellor to good standing, without its members being subject to a new medical examination ; if within thirty days from date of

suspension such section shall pay all arrearages of assessments."

"Art. VI, Sect. 7. Less than seven members of a suspended section can only again become members of the endowment rank by making application to the supreme lodge, or the supreme chancellor for a clearance card, paying all assessments for ninety days after suspension, and passing a medical examination, and then only after the surrender of all properties of the section to the supreme lodge."

"Art. VII, Sect. 1. Upon receiving notice of an assessment, each member shall at once pay the amount to the secretary and treasurer of the section to which he belongs. In case any member neglects for thirty days after date of notice to pay said assessment, he shall stand suspended from that class of the endowment rank for which said assessment was made, and shall forfeit all claims upon the endowment fund belonging to said class, and the fact of said suspension shall be reported to the supreme master of exchequer, upon the remittance blank, *provided*, that any member thus suspended for non-payment of assessments shall have the privilege of regaining all his rights as a member of the section, in said class, within three months, by passing a new medical examination and paying all the assessments that may have accrued up to that time. But when three months shall have elapsed from the date of suspension, he shall be required to pay, in addition to the assessments that have accrued during the first ninety days after such suspension, the sum of two dollars, pass a new medical examination, and then be re-admitted by a two-thirds vote of the members of the section present when the application is made. All reinstatements in accordance with this section shall be reported to the supreme master of exchequer by the secretary and treasurer, in his remittance blank. The provision of this section shall apply to all members now under suspension."

"Art. IX, Sect. 1. Every applicant for membership

in the endowment rank shall designate in his application some person or persons to whom the benefit shall be paid when due, and the name of the person or persons so designated shall be inserted in the benefit certificate."

On June 30, 1882, Section No. 346, located at Holden, Mo., to which Frank K. Kirkpatrick belonged was duly and regularly suspended by the supreme chancellor of the order for non-payment of assessments in the endowment rank. On the twenty-second day of October, 1882, which, it will be perceived, was more than three months after this suspension, Mr. Kirkpatrick made an application for reinstatement as a member of the endowment rank. This application was made on the same printed form which is used in original applications for membership in the endowment rank. It was headed, "Application for membership in the endowment rank, K. of P." It proceeded to state that, "the undersigned is desirous of becoming a member of section 346, endowment rank, of the order of Knights of Pythias. This application will become a part of the contract if accepted." Question eleven of this application is as follows: "State definitely to whom you wish the benefit made payable, and relationship to you." The answer to this question was: "$2,000 to Mrs. Frank K. Kirkpatrick; $1,000 to J. W. Strode—personal friendship." It will be perceived that the effect of this application was to designate a new beneficiary, Mrs. Frank K. Kirkpatrick, the wife of the applicant, in place of Ethie Kirkpatrick, the beneficiary named in the former certificate, which, by its terms, had become null and void. Immediately following these answers was the following statement: "I am not now a member of the endowment rank, have not been rejected within the past six months, and am not now under suspension." The statement that the applicant was not under suspension must, under the circumstances, be taken to mean that he was not under suspension as a member of the order, because it was known to both of the contracting parties

that he was under suspension as a member of the endowment rank of the order. Appended to this application was a paper called, "Certificate of Lodge," which read as follows: "This certifies that Brother Frank K. Kirkpatrick is a member of the Knights Rank of Alma Lodge, No. 26, of the Grand Jurisdiction of Missouri, city or town of Holden, in good standing, and that his dues are paid to January 11, 1883." This was attested by the "Master of Finance" and another officer of the lodge. Then followed the certificate of the medical examiner, and next a "Report of Committee on Character" addressed "To the Officers and Members of Section No. 346, Endowment Rank, K. of P.," which was signed by the committee of three, and represented Mr. Kirkpatrick as of good moral character, etc. Beneath this was an endorsement, "balloted for and elected, October 29, 1882, J. W. Strode, secretary and treasurer."

On the third day of January, 1883, Mr. Kirkpatrick was, upon this application, duly reinstated, and notice of his reinstatement was communicated by an officer of the defendant, called the "Supreme Master of Exchequer," to J. W. Strode, who was the secretary and treasurer of the suspended Section No. 346, of the order, to which Mr. Kirkpatrick belonged. This notice stated that "Brother Kirkpatrick is reinstated from to-day." On the same day a "Clearance Card" was issued by the proper officer of the defendant to Mr. Kirkpatrick, and was received by the latter and countersigned by him. He held this clearance card until his death, which took place on the twenty-sixth day of February, 1883. So much importance is attached to this clearance card that it will be set out in full:

"CLEARANCE CARD, No. 109.

"Certificate No. 7057, in First Class. Certificate No.
10,006 in Second Class.

"Supreme Lodge Knights of Pythas, Endowment Rank.

"Clearance Card for Members of Defunct Sections.

"This is to certify that Brother Frank K. Kirkpat-
rick was duly admitted a member of Section No. 346 of
the Endowment Rank, located at Holden, Jurisdiction
of Missouri, on the twenty-sixth day of March, 1880, P.
P. XVII, and has paid all assessments and other claims
against him to this date, and is under no charge
whatever.

"Said Section, having surrendered to the proper
authorities the warrant from which it held existence by
authority of the Supreme Lodge Knights of Pythias, we
do hereby grant to said brother this Clearance Card, and
recommend his admission to any section of the Endow-
ment Rank within six months from the date hereof, and
no longer, upon his presenting evidence that he is a
member of a subordinate lodge of Knights of Pythias in
good standing, and that he is not indebted for any as-
sessments in either class of the Endowment Rank to
which he belongs, and not otherwise.

"In witness whereof, we have signed our names
and affixed the seal of the Supreme Lodge, this third
day of January, 1883, and of Pythian Period XIX.

"JOHN P. LINTEN,
"Supreme Chancellor.

"Attest:     JOHN J. WARD,
"Supreme Keeper of Records and Seal.

{ Seal of          } (Signed)
{ Supreme Lodge,   } "FRANK K. KIRKPATRICK.
{ K. of P.         } "Signature name in full of holder.

The original certificate of membership which Mr.
Kirkpatrick held in the second class of the endowment

rank, and which, as already stated, had, by its own terms, become null and void, was No. 10,006. It is perceived that this clearance card designated Mr. Kirkpatrick as the holder of certificate No. 10,006, and that he accepted the card, countersigned the same, as he was required to do by the regulations of the order, and had it in his possession at the time of his death. No new certificate of membership was ever issued to him, and, consequently, he never held any certificate of membership containing any other designation of the beneficiary than his original certificate, which designated the female plaintiff as such beneficiary; nor were the names of the new beneficiaries, designated in the application for readmission, entered on the records of the supreme master of exchequer of the defendant. In his deposition, already referred to, Mr. Nelson, the supreme secretary of the Knights of Pythias, gave this reason why they were not so entered: "The names of the new beneficiaries, inserted in the application, were not entered in the records of the supreme master of exchequer, for the reason that, not being an original application, in the sense of being a first application, but being simply for reinstatement, the applicant could only change the beneficiary in accordance with the law. Vide Sect. 2, Art. IX, of the Constitution for the Endowment Rank. Consequently, its insertion in the application for reinstatement was unauthorized, and being provided for by the section quoted, could only be changed in accordance therewith." The part of this statement, beginning with the words, "For the reason," etc., was objected to by the defendant, and the objection was sustained by the court. The propriety of this ruling is the secondary question for determination which arises upon this record, alluded to in an early part of this opinion. We can not see that the court was wrong in this ruling. The language excluded was a statement of two things: 1. The reason why the new beneficiaries designated by Mr. Kirkpatrick have not been entered on the records of the supreme master of exchequer. Thi

reason does not appear to have been material, since it did not involve any new fact, but merely a matter of opinion on the part of the officer having his duty to perform. 2. The opinion of the witness as to the proper construction of Sect. 2, Art. IX, of the constitution for the endowment rank. This was not a matter which called for the opinion of this witness as an expert. It was an opinion as to the proper construction of certain contractual writings. It is well settled that the statutes of societies of this kind are, in the nature of contracts among the members, and between the individual members and the highest incorporated body of the society. The opinion of this official, although entitled to respect on the part of members of the order, on account of his position therein and his necessary familiarity with its regulations, is not binding upon the judicial courts. It nowhere appears that by the laws of the order he was designated as a judicatory of the order to decide the construction which should be placed upon doubtful clauses of the laws of the order. The construction is, therefore, to be determined by us, upon a consideration of the language employed, and the opinion of a third person is not to be looked to to aid us in such construction, and is hence not evidence for such a purpose. The argument of the learned counsel for the appellants, that the best indication of the meaning of a law is the way in which it has been construed by the makers, is conceded to have force, but it does not even appear that this witness was one of the makers of this law.

Besides, his construction is at variance with the plain terms of the section of the laws of the order which he undertakes to construe. This section, relating to the manner in which a member may change the name of the beneficiary in his case, is as follows:

"Art. IX, Sect. 2. A member desiring to change the name of the beneficiary in his case, shall make a written request to his section, at a regular meeting thereof, and thereupon a copy of such request shall be

entered on the records, and action shall be taken thereon by the section, and if the same is favorable to the change, the original request, under the seal of the section, together with the certificate originally issued, shall be sent to the supreme master of exchequer, and he shall attach the same to the original application in the case, and shall enter such transfer in a book of transfers, to be kept for the purpose ; and thereupon the party to whom the transfer has been made shall be entitled to a new certificate, and one shall be issued to him ; *provided, however,* no transfer shall be made or allowed for any pecuniary consideration, but only when it is made on account of natural love and affection."

A change in the names of the beneficiaries in this case, in accordance with the provisions of this section, was impossible, because the section to which the member belonged had been suspended and was non-existent. This section can only be interpreted as referring to cases· where the section of the endowment rank, to which the member who desires to change the name of his beneficiary belongs, is in existence ; it manifestly can have no application to the anomalous state of a member holding his membership in the endowment rank by means of a clearance card and not belonging to any section. It does not appear that any other provision exists in the "Constitution for Sections of Endowment Rank" prescribing the manner in which a member may change his beneficiaries, or that any provision exists prescribing a formality for a change of beneficiaries in cases of members who hold clearance cards and do not belong to any section. Indeed, the confusion of this case seems to have resulted from the lack of any precise regulation touching the re-admission of members of suspended sections ; for, in the above recitals of fact, it is perceived that the nonsensical form was gone through with of balloting for and electing the candidate to a suspended and defunct section, of this fact being certified to by an officer of such section, and of the fact of the candidate's rein-

statement being in turn communicated by an officer of the grand lodge to this officer of the defunct section.

Under the provisions of Sect. 3, Art. V, of the constitution for sections of endowment rank above set out, it was the duty of the supreme master of exchequer, in this case, immediately upon the approval of Mr. Kirkpatrick's application for re-admission, to issue to him a regular certificate of membership in the endowment rank for the classes designated in his application. If this certificate had been issued in accordance with the terms of the application, as Mr. Kirkpatrick had the right to require of the defendant, it would have designated his wife and not his daughter as the beneficiary of the second class certificate. If, therefore, the officer of the defendant who gave the deposition above quoted from, had not taken an erroneous view of his duty under the laws of the order, this certificate would have been in possession of Mr. Kirkpatrick at the time of his death, his clearance card would have referred to this certificate and not to the defunct certificate, and this controversy would not have arisen.

We see no force in the argument that the acceptance of the clearance card, which referred to the old certificate, operated as a waiver and release of the direction contained in the application for re-admission for a change of beneficiary. Clearly, this did not operate as a waiver or release, unless, by accepting this paper with its erroneous recitals, Mr. Kirkpatrick estopped himself from demanding of the defendant the proper correction and the issue to him of a new certificate, as required by Sect. 3, of Art. V. We know of no principle upon which the fact of such neglect or carelessness can be construed into an estoppel, especially where the defendant, the only party entitled to insist upon the estoppel, is not claiming it. It does not appear that, prior to the death of Mr. Kirkpatrick, the defendant had changed its position or that any circumstances had arisen which would

have made it detrimental to it to make the proper correction.

This brings us to the final argument urged on behalf of this plaintiff, which is that in the designation of a new beneficiary in respect of class 2, the minds of the different contracting parties have never met. This argument proves too much for the plaintiff's case. If the minds of the contracting parties had never met as to the substitution of the new beneficiary, their minds had certainly never met as to the continuance of the original beneficiary. The application for re admission was in form the application for admission of a person who was not then a member of the endowment rank. He stood on the outside knocking at the door. It was within the power of the properly constituted authorities of the defendant to let him in or to keep him out. He designated the terms on which he desired to be let in. One of these terms was that the benefit of two thousand dollars, secured in class 2, should be paid to his wife, and not to his daughter, as in his former certificate. When the defendant, through its proper officers, accepted this application and re-admitted the applicant, it assented to these terms. The mere fact that its proper ministerial officer failed to issue to him the new certificate, according to Sect. 3, of Art. V, does not tend to show that there was not a meeting of minds upon the point of the change in the beneficiary. The issuing of that certificate was a mere ministerial duty. Upon his being re-admitted as a member, he was entitled to claim it by operation of law, so to speak—by operation of the laws of the order, which were a part of the contract between the parties. It was a mere formality—an important formality, it is true—but, nevertheless, the certificate was a mere evidential writing, and it can not, upon any plausible ground, be argued that no contract existed until it was issued. If no contract existed until it was issued, then Mr. Kirkpatrick never was reinstated, and died outside of the order—a circumstance which would be equally fatal to the plaintiff's

case. In these cases the judicial courts look beyond mere matters of form, especially matters of form which are involved in the neglect and misprisions of ministerial officers, and give effect to the contracts of parties according to their substance, and to what plainly appears to have been the mutual intent and understanding. Mr. Kirkpatrick was out of the order and desired to be taken back. He applied to be taken back on the condition that they would change his beneficiaries. No objection was ever made to this condition. Upon this condition they did take him back, and when they so took him back they did change his beneficiaries. The plaintiffs, therefore, have no right of action, and the right of action, which is conceded to exist, is in the mother.

The judgment of the circuit court will be affirmed, with the concurrence of all the judges.